MILLER, Auditor, *v.* WALLEY.

[84 South. 466. In Banc. No. 21372.]

1. STATUTES. *Act appropriating funds for support of charity hospital, and providing that superintendent should devote entire time to the office, held broader than constitutional provsion; when act does not become law stated.*

House Bill No. 122, passed by the legislature and vetoed in part and approved in part, providing in section 1 "that the sum of forty-five thousand dollars for the year 1920 and a like amount for 1921 be and the same is hereby appropriated out of any money in the state treasury not otherwise appropriated, for the support and maintenance of the State Charity Hospital at Jackson, Mississippi: Provided, that this hospital shall be used only for charity patients: Provided further, that the superintendent shall devote his entire time to the duties of his office," is broader in meaning than section 267 of the state Constitution, providing that "no person elected or appointed to any office or employment of profit under the laws of this state . . . shall

hold such office or employment without personally devoting his time to the performance of the duties thereof;" and said bill having failed to receive the Governor's approval, and not having been in his possession five day before the adjourment to the legislature, did not become a law.

2. STATES. *Constitutional provision relative to time to be devoted by public officers to their duties construed; "devoting his time."*

Section 267, providing that "no person elected or appointed to any office or employment of profit under the laws of this state . . . shall hold such office or employment without personally devoting his time to the performance of the duties thereof," means: "If the public duties of an officer require all the time of the public servant, then the whole time must be given. If all the time of the officer be not required for the complete and faithful execution of his trust, then he shall give such time and devote such service as shall suffice for the full and faithful discharge of the duties of his office." *Fairley* v. *Western Union Tel. Co.*, 73 Miss. 6, 18 So. 796.

This section does not prevent the legislature from providing by statute that the entire time shall be given to the office or employment.

3. STATES. *Meaning of requirement of officer's "entire time."*

The word "entire" is defined as meaning: "Undivided, unmingled, complete in all its parts; whole; not participated in with others." 15 Cyc. 1054; 11 Amer. & Eng. Enc. Law, 48.

4. STATUTES. *Governor cannot veto condition of appropriation act and approve appropriation.*

Under section 73 of the state Constitution of 1890, the Governor cannot veto a condition of an appropriation act and approve the appropriation without the condition imposed by the legislature. *State* v. *Holder*, 76 Miss. 158, 23 So. 643.

HOLDEN, J., dissenting.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Mandamus by Willis Walley against W. J. Miller, Auditor, to compel issuance of a warrant. Judgment for plaintiff, and defendant appeals. Reversed and dismissed.

*Frank Robertson,* for the state.

I must confess that I follow the reasoning of the lower court with very great difficulty. As has already been stated in order for the writ of mandamus to issue, there must be an appropriation bill, out of which the warrant could be paid. The only question then necessary for this court to decide is, did the bill become a law? If this court is of the opinion that the bill was never enacted into statute, then it is not necessary for this court to pass upon the question as to the meaning of the proviso.

The same question has been before this court in the case of *State* v. *Holder,* 76 Miss. 158, 23 So. 643. That case was ably and exhaustively briefed and it appears from the official report that the learned circuit judge represented the teachers and officers of the Industrial Institute and College and unsuccessfully undertook to compel the auditor of public accounts to issue warrants for their salaries. I commend to the court the briefs of the counsel for appellee in that case, and it will appear that that case is on all fours with the case at bar. In that case, as in this, the then governor attempted to veto the part of the appropriation bill and approve a part. In no uncertain terms, the court, speaking through Chief Justice Woods said: "The bill is an entire thing inseparable in its provisions, and to be approved or disapproved as such, and not having been signed as a bill, was not made by the partial and qualified approval which it received. It cannot be law, for that would be to make law which has not been concurred in by the Legislature and the Governor." The last paragraph in this opinion clearly decides the proposition that the governor when he attempted to veto a part of the bill and approve a part, in legal contemplation did nothing at all, but that the bill was still in his hands subject to be returned to the next legislature within

three days after it shall have convened, due to the fact that the legislature adourned within the five day period after the bill was placed in his hands for approval. The court said:

"The action of the Governor having been unconstitutional and, therefore, void, his action in regard to the bill was a nullity, but the legislature having adjourned within five days after the presentation of the bill to the Governor, the bill in legal contemplation must be held to be yet in the hands of the Governor, and may become law unless sent back by him within three days after the beginning of the next session of the legislature."

Unless the Holder case is to be overruled, the bill did not become law and, therefore, there is no fund available out of which a warrant could be paid . . . this is a necessary preliminary for the issuance of the writ of mandamus.

It is not necessary to determine the meaning of the proviso, or whether it is already the law, in this case, in order for this court to pass upon the question as to whether the bill became law or not. The sole question, as I see it, is, if the attempted action of the Governor in vetoing the bill was a nullity, then, under the Holder case, the bill is still in his hands. This, in my judgment, disposes of this law suit, and shows that the lower court erred in overruling the demurrer to the petition.

Counsel for appellee argue in the latter part of their brief that if the action of the governor in attempting to veto a part of the bill was a nullity that the bill as originally passed became the law and admits that this is in conflict with the holding in the Holder case, supra. The case of Porter v. Hughes, 32 Pac. 165, is quoted there as supporting this proposition. It will be noted that the case so cited was decided prior to the Holder case and was cited in the brief of counsel for the appellant in that case as will appear from page 162, 76 Miss. It will not be argued that the Holder case was

not maturely and exhaustively considered by our court. I do not believe that this court will now overrule that case which has been the law in Mississippi for twenty-two years, and has been cited with approval in the following cases: *Nowell* v. *Harrington* (Maryland), 89 Atl. 1098; *Lukens* v. *Nye* (California), 105 Pac. 593; *Regents of State University* v. *Trapp, State Auditor* (Oklahoma). 113 Pac. 910.

I am so strongly convinced that this court will take the view that the sole and necessary question upon which it is called upon to decide, is, did the bill become a statute, and that it will follow the Holder case in holding that because of the attempted veto of the Governor that the bill is still in his hands, that I shall not prolong this brief at any very great length discussing what appears to me to be minor, immaterial and irrelevant questions in the case before the court.

It is stated in the opinion of the circuit Judge overruling the demurrer and in counsel's brief, that the proviso adds nothing to the bill, and since it adds nothing that is not already law, that the demurrer was, properly overruled. It is argued that section 267 of the constitution now requires any official of this state to personally devote his time to the performance of the duties thereof, and that the only difference in the constitutional provision and the bill in question is the addition of the word "entire." It is stated that that is the meaning of the constitution and therefore nothing new is added. The case of *Fairley* v. *Western Union Telegraph Company*, 73 Miss. 6, is cited in support of this contention. I submit with the utmost confidence that this is an unfortunate citation for the appellee. The same eminent jurist delivered the opinion in the *Holder case, supra*, as in the Fairley case. In that case section 267 of the constitution was before the court for interpretation. In the most emphatic language he said: "It forbids not only the farming out of a public office, but

it requires that the official shall give his own time and personal service to the performance of the duties of his office. Having been elected or appointed to a public office because of his fitness for the proper performance of the duties of his place, the official himself, shall be required to give his time, his attention and his services to the discharge of his official duties." As to the amount of time that a public officer must devote to the position of his office, the court said that such a question must have reasonable answer, and the court held that officers should give such time as shall suffice for the full and faithful discharge of the duties of his office.

The legislature, for reasons which we must assume to have been for the best interests of the State Charity Hospital, did not desire to leave the matter as an open question as to the amount of time that the superintendent must devote to the duties of the position but attempted to require this official to devote his entire time to the duties of the office. This court will accept as conclusive that the legislature was actuated by proper motives and was acting for the best interest of the state.

*Robt. B. Mayes* and *Clayton D. Potter,* for appellee.

It is the contention of the auditor that under the rule laid down in the case of *State* v. *Holder,* 76 Miss. 154, that the attempt on the part of the Governor to veto the clause under consideration rendered the entire effort to approve the bill nugatory, and that since the bill was placed in the governor's hands within only two days of the adjournment of the legislature in the contemplation of law, the bill is still in his hands approved. In other words that the situation is the same as if the Governor had not signed the bill at all, and since the Governor received the bill on the 2nd day of April, and the legislature adjourned on the 4th day of April, the same is yet in his hands and would only become a law without his signature if he fails to return the bill without his

approval within three days after the legislature convenes the next time.

We contend that the clause the Governor attempted to veto: "Provided further, that the superintendent shall devote his entire time to the duties of his office" would in no wise change or affect the Act under consideration. It is our contention that had the bill been signed as written with the clause under consideration still in the bill the effect of the law would in no wise be different from the same bill with the clause under consideration left entirely out. We contend, in short, that the clause under consideration in no wise changes the effect or meaning of the act in question.

This clause is not a condition precedent to the payment of the money such as was provided in the appropriation for the salaries and repair of the Industrial Institute and College for the years 1898 and 1899, involved in the case of *State* v. *Holder, supra*. The act under consideration is unlike that act as it contained a provision that no part of the money should be available unless the board of trustees should first adopt certain stipulated rules and by-laws, and the stipulations on which the appropriation was suspended the Governor disapproved of and attempted to approve the bill in other respects. Clearly under that Act, if the bill had been approved as passed, no money could have been drawn unless it was first made to appear that this condition had been met.

In the appropriation bill under consideration, there is no condition precedent to the payment of the money. If the bill under consideration had been approved by the Governor as originally written with the clause in controversy written therein, yet, nevertheless the appropriation could not have been lawfully withheld, as stated in the opinion of the circuit judge, the words "provided further" in the Act are equivalent to and only mean "enacted further" and does not make payment condi-

tional upon a showing that the superintendent gave his undivided time to his official duties.

"The word 'provided' is used in our legislation for many other purposes besides expressing a condition." *United States* v. *Atlantic Coast Line Railroad Company,* 153 Federal 918; *Schlemmer* v. *Buffalo T. & P. Co.,* 27 Sup. Ct. Rep. 407; 205 U. S. 1, 51 L. Ed. 681. "It does not necessarily follow because the term provided is used in a statute that that which may succeed it is a proviso though that is the form in which an exception is generally made to, or a restraint of a qualification imposed on, the enacting clause. It is the matter of the succeeding words, and not the form, which determines whether it is or is not a technical form, which determines whether it is or is not a technical 'proviso.'" *Carroll* v. *State,* 58 Ala. 396.

"The word 'provided' is often used in a statute as a conjunction to an independent paragraph." *Carter* v. *United States,* 143 Federal 256; *Georgia Railroad Co.* v. *Smith,* 128 U. S. 174. Now it will be noted that the word "provided" in statutes under the authority above cited does not always and under all circumstances mean when written in a statute, upon a condition.

We urge that it would impute folly to the legislature to hold that the clause in the Act under consideration is a condition upon which the appropriation was made. The statute does not provide in terms that this entire appropriation would be unavailable, and that the State Charity Hospital must close up its doors because forsooth the superintendent does not devote all of his time to the duties of his office, and further than that, the statute does not provide who shall determine whether or not the superintendent is devoting his entire time to the duties of his office. Is this a matter to be determined by the board of trustees? Or is it a matter to be determined by the state auditor or state treasurer? Is every person through whose hands the money must

pass a censor of the official conduct of the superintendent of the State Charity Hospital? If the entire law had passed as written, who was to say how much time the superintendent of the Charity Hospital was to give to his work before he had given his "entire" time.

We urge in view of the fact that the word "provided" in the statute is often used in the same sense that the words "be it enacted" are used; that this was the sense intended by the Act in question. It cannot be that the legislature intended to visit upon its most unfortunate class of citizens, upon the sick and the suffering in the State Charity Hospital the possible sins of the superintendent of the Hospital.

There is another construction, a sane and reasonable construction, and we feel confident that the court will adopt that construction, and that is that the word "provided" as used in this statute would not create a condition, but is a mere declaration by the legislature of the existing law.

Taking it for granted that we have established our contention, the clause in question is not a condition upon which the money should be paid. Then, the statute creates no change in the law as already written except to provide an appropriation, for no penalty is provided for violation of the clause under consideration; it is not enforceable, and could have been entirely omitted from the statute without legal effect. For section 267 of our Constitution provides: "No person elected or appointed to any office of employment or profit under the laws of this state or by virtue of any ordinance of any municipality of this state, shall hold such office of employment without personally devoting his time to the performance of the duties thereof."

In his written opinion on page — of the record the circuit judge quoting the above section of the Constitution said: "The only difference in the constitutional

provision and the clause of the Act of 1920 disapproved is the word 'entire' making the act read, shall devote his entire time to the duties of his office. Rigidly construed, a performance of such clause is impossible. No officer could survive without time to eat, sleep, and take necessary recreation. Fairly and reasonably construed, the constitutional provision is as broad as the attempted legislation.''

We think the above language of the circuit judge expresses the true intent and meaning of the constitutional provision, and of the disapproved clause in the Act under consideration. We contend that the law with or without the clause under consideration is the same if the statute had been passed and approved by the Governor and had there been omitted from it the disapproved clause, its effect would have been different in no respect from the statute, had it passed as originally written and been approved by the Governor in that form. It is now the law, and it has always been the law, that unless an officer gives his personal attention to the duties of his office, and devotes all necessary time to the duties of his office that he is guilty of a misdemeanor in office. We, therefore, contend that in view of the fact that the effect of the bill is the same with or without the clause the Governor disapproved that therefore, the mind of the legislature and the mind of the Governor were in accord on all the essential portions of the Act under consideration.

In other words, the bill as written and the bill as approved are substantially the same, and have the same meaning and effect in law, and that is all that is necessary to the validity of an act of the legislature. ''The bill that is presented to the executive must be essentially the same as the one passed by the legislature; a material variance between the bill approved by the executive and the one passed by the legislature invalidates the enactment.'' 25 R. C. L., page 887, paragraph 137.

It will be noted that the law provided that the bill presented to the executive must be "essentially" the same as the one passed by the legislature, and that there must be no "material variance." Now it is our contention that the striking out of the disapproved clause in the bill would not essentially change the meaning of the bill as the omission of the disapproved clause is not a material variance. The same principle we contend for is applied in the case of *Desta Drew Road* v. *Taylor*, 130 Ark. 503, 197 S. W. 1152. The same principle is decided in the case of *Gaines* v. *Harrigan*, 4 Tenn. 608.

In the instant case the Governor indicated that he had no objection to the policy of the bill, but only attempted to use his veto because he was under the impression that this portion of the bill had been unconstitutionally passed, and for all the intents and purposes he indicated that he would have approved even this portion of the bill except for its supposed unconstitutionality. and, therefore, he approved the bill except in so far that he believed it was unconstitutional. *Porter* v. *Hughes*, 32 Pac. 165.

We think the Fuller case which is a later case than the Holder case, is only different from the case at bar in that it applies to the judicial rather than to executive authority, and is a stronger view, and that as there is no difference in the two cases in principle that the law ought to be harmonized in this respect, and the same rule applies to the act of both the executive and judicial branches of the government.

Conclusion. We have diligently searched the books but we find very little authority on this subject. We have been very diligent in our efforts to present all the authority possible in this case because of the importance of the case to the state and to the people. If this law is declared void, the appropriation for the year 1920 must be borrowed for two years, and the appro-

priation for the year 1921, for a period of one year, and the interest rate on such loan is six per cent. per annum, and the state will be out an interest account of about eight thousand dollars although it has sufficient funds in its own treasury to keep the Charity Hospital going, and it is uncertain whether such loan can be obtained. Certainly not until after months of correspondence with different members of the legislature, and obtaining from them their consent to such proceeding. In the meantime the hospital is without funds. In the event the money cannot be borrowed, then it will be necessary for the governor to either call a special session of the legislature to make this appropriation or close the State Charity Hospital.

We therefore urge the most careful consideration of this case, as it involves matters vital to the commonwealth's best interests, and we most respectfully urge that while courts do not consider consequences, yet, this is at least one of those cases in which the doubt, if any exists, should be resolved in favor of the validity of this law.

ETHRIDGE, J., delivered the opinion of the court.

This is a mandamus suit brought to compel the auditor to issue his warrant in payment of an amount approved by the trustees of the State Charity Hospital, under the theory that House Bill No. 122 of the last legislature became a law.

Section 1 of this act reads as follows:

"Be it enacted by the legislature of the state of Mississippi, that the sum of forty-five thousand dollars ($45,000) for the year 1920 and a like amount for 1921, be, and the same is hereby appropriated out of any money in the state treasury not otherwise appropriated, for the support and maintenance of the State Charity Hospital at Jackson, Mississippi: Provided, that this hos-

pital shall be used only for charity patients: Provided further, that the superintendent shall devote his entire time to the duties of his office.''

This bill, having passed the House and Senate, reached the Governor on the 2d day of April, 1920, and the Governor indorsed on the said bill the following:

''Approved by the Governor April 3, 1920, except the last sentence in section 1 which reads as follows: 'Provided further, that the superintendent shall devote his entire time to the duties of his office.' Section 69 of the Constitution of the state of Mississippi forbids ingrafting legislation on appropriation bills and the above clause attempts to do this and said last sentence quoted above is hereby specifically vetoed and disapproved. All the remaining parts of this bill are approved. I have no desire to interfere with the policy of the legislature if it shall see proper to require of the superintendent full time but this veto, above expressed, in this feature of the bill is based solely upon constitutional grounds.''

The legislature adjourned on the same day.

The auditor refused to issue a warrant under the advice of the Attorney-General, and this action was instituted to compel him to do so, and the circuit court directed the writ should issue, from which judgment appeal was prosecuted here. The circuit court delivered a written opinion holding that the proviso in the act that the superintendent should devote his entire time to the duties of his office did not add anything to and was not different from the law before in force in section 267 of the state Constitution, which reads as follows:

''No person elected or appointed to any office or employment of profit under the laws of this state, or by virtue of any ordinance of any municipality of this state, shall hold such office or employment without personally devoting his time to the performance of the duties thereof.''

The learned circuit judge said:  "The only difference in the constitutional provision and the clause of the act of 1920 disapproved is the word 'entire,' making the act read, 'shall devote his entire time to the duties of his office.' Rigidly construed, a performance of such clause is impossible. No officer could survive without time to eat, sleep, and take necessary recreation. Fairly and reasonably construed, the constitutional provision is as broad as the attempted legislation."

The appellees here rest their case upon the correctness of the proposition that the provision in the act requiring the superintendent to devote his entire time added nothing to the law, and the case of *Fairley* v. *Western Union Telegraph Co.,* 73 Miss. 6, 18 So. 796, is relied upon by the appellee, while the appellant contends that the present case is controlled by the case of *State* v. *Holder,* 76 Miss. 158, 23 So. 643. In the Fairley Case Judge WOODS, speaking for the court, in construing section 267 of the Constitution, after discussion, said:

"If the public duties of an office require all the time of the public servant, then the whole time must be given. If all the time of the officer be not required for the complete and faithful execution of his trust, then he shall give such time and devote such service as shall suffice for the full and faithful discharge of the duties of his office."

In that case the contention was made that Fairley, who was plaintiff, was not entitled to recover in damages for the loss occasioned him as a physician by failure to receive the message and the consequent loss of employment and physician's fees he would have earned had the message been delivered, but the court held that he was not precluded from rendering medical service by reason of his employment as superintendent of the Institute for the Blind during a period of vacation when the pupils had returned to their several homes. The decision does

not hold that the entire time of the superintendent was to be devoted to the public office, but holds that only such time as the duties of the office required for a proper performance must be devoted to the duties of the office. This necessarily presents a latitude for differences and debate as to what time is required as a matter of fact.

In 1910 the legislature passed the County Depository Law and took from the county treasurer the performance of certain duties and reduced his compensation to three hundred dollars per annum where a county depository was maintained. This act was challenged as being unconstitutional for several reasons, and among others, that it violated section 267 of the Constitution, but in two cases, *Magee* v. *Brister,* 109 Miss. 183, 68 So. 77, and *Fidelity & Deposit' Co.* v. *Wilkinson County,* 109 Miss. 379, 69 So. 865, this court held that the act did not violate this section of the Constitution. Manifestly, if the officer must devote his whole time to the duties of his office, three hundred dollars per annum would have been an unreasonable salary for such service and time as would have been required.

We think the word ''entire'' in the statute means something and imposed upon the superintendent obligations of greater extent than were imposed on him before, and that the legislature had a right to require the full time of an officer or superintendent of one of its institutions, and at least, the statute was intended to remove from the field of disputation the amount of time that was necessary for the superintendent of the State Charity Hospital to devote to the duties of that position.

The word ''entire'' is defined in 15 Cyc. 1054, as meaning: ''Undivided, unmingled, complete in all its parts; whole; not participated in with others.''

11 Amer. & Eng. Enc. of Law, at page 48, defines it as follows: '' 'Entire' means whole, undivided; not participated in by others.''

The duties of the superintendent of the State Charity Hospital are defined in section 3946 Hemingway's Code, which reads as follows: "The superintendent shall perform such duties as may be prescribed for him by the board of trustees, and shall appoint all officers and employees of said institution, with the advice and consent of the board of trustees, and may, for cause, dismiss them, subject to their right to appeal to the board of trustees. He shall make an annual report to the board of trustees up to the last day of October, giving such information as the trustees may require."

The State Charity Hospital is a considerable institution, located in Jackson, Miss., in which are treated numerous cases of sickness of, and surgical operations performed on, poor people, and at almost any time the presence of the superintendent might be required. While as a matter of fact, the statute does not require the superintendent to be a physician, yet physicians are usually appointed to this place, and are better able to perform the duties of the superintendent for the reason that a physician would be better able to know the needs and requirements of patients, and the duties and qualifications of nurses and other employees. Usually the superintendent has heretofore practiced medicine for other people than the inmates of said institution for compensation as a physician, which fees or compensation adds to the compensation of the superintendent, and, to some extent at least, brings the personal interests of the superintendent and the interests of the hospital in conflict; and under the law prior to the present time the question of how much of the superintendent's time was necessary was a matter of debate and difference of opinion. The legislature had the right to appropriate or not appropriate the money to support the institution, and could attach to an appropriation such conditions as it saw proper, at least so long as they were reasonably conductive to the welfare of the institution.

In the bill under review the legislature provided two conditions or provisions: First, that the hospital shall be used only for charity patients; and, second, that the superintendent shall devote his entire time to the duties of his office. Both of these conditions seem to have a reasonable relation to securing the purposes for which the institution was established. The legislative department deemed these provisions important and necessary to carry out the purposes and to secure the best results at the institution. The Governor, representing another department of the government, thought that those provisions meant something, and undertook to veto the last provision mentioned. The veto was based upon the ground that the bill was ingrafting legislation upon an appropriation bill in violation of the Constitution. If the provision was meaningless, certainly it could not be ingrafting legislation on the bill. Therefore it seems that both of the other departments of the government thought that the provision added something to the law, whether it be a condition precedent or a condition subsequent is immaterial. We think also that the provision means something, and that inasmuch as the Governor did not approve the bill as passed by the legislature, and inasmuch as the bill was not returned to the legislature and passed over the veto, and inasmuch as the five days which he is allowed to retain a bill had not expired, this case falls within that of *State v. Holder*, 76 Miss. 158, 23 So. 643, and is controlled by that decision, and is still, in legal contemplation, in the possession of the Governor.

It is not necessary and it is not intended in this case to decide what the duties of the Governor may be with reference to returning the bill to the legislature for further action where he approves part and vetoes a part thereof, which question we reserve for future consideration in a proper case. What we mean here is

that the bill was not affirmatively acquiesced in by the legislature, nor passed over the Governor's veto.

For the reasons indicated, the judgment is reversed, and the demurrer sustained, and the suit dismissed.

*Reversed and dismissed.*

HOLDEN, J. (dissenting).

I cannot agree with the position taken by the majority in this case, although I think the question presented is exceedingly close, and a decision either way is not to be violently criticized.

I think the holding of the lower court, which is now reversed by the majority here, is the more reasonable and better view to maintain. The opinion written by the circuit judge clearly presents the reasons upon which he based his decision, and I shall set it out and adopt it as my view of the case. But before doing this I desire to discuss more particularly one point, and that is the question as to what is the meaning of the provision that the superintendent shall devote his entire time to the duties of his office; or, in other words, what is meant by "his entire time."

I think the provision that he shall devote his entire time to the duties of his office means that he shall devote the whole or entire amount of his time necessary to the full and efficient performance of the duties of his office. More than this would be impracticable, if not impossible. In the present case the time necessary to the full performance of the official duties of the office might be any number of hours per day according to the demands of the day, and this demand would constitute the "entire time" meant to be required so as to adequately and competently perform all of the duties of the position.

A failure on the part of the official to devote his entire time necessary to completely and efficiently perform the duties of the office, regardless of the amount of

time necessary, would subject the office holder to the charge of failure of duty and removal. Undoubtedly the legislature meant to provide that the officer should devote his entire time necessary to the performance of the duties of his position, and this provision should be given full force and effect.

But under section 267 of the Constitution, which is set out in the opinion following, the office holder has always been and is now required to devote his personal time to the performance of the duties of his office, which means that he must devote his entire time necessary to the full and efficient performance of the duties thereof, without specifying any particular amount of time, so that he will have adequately performed all the duties pertaining to the position. Therefore the provision in the act adds nothing to the law as already provided in the Constitution; consequently the veto of it by the Governor amounted to nothing; such veto was not a material alteration of the law; the provision should be treated as surplusage in the act. *The Holder Case,* 76 Miss. 158, 23 So. 643, is obviously not in point. Following is the opinion of the circuit judge, which I approve:

"Chapter 38 of Acts of legislature of 1920 contains the appropriation for the State Charity Hospital for the years 1920 and 1921. Its first section is: 'Be it enacted by the legislature of the state of Mississippi, that the sum of forty-five thousand dollars ($45,000) for the year 1920 and a like amount for the year of 1921, be, and the same is hereby appropriated out of any money in the state treasury not otherwise appropriated, for the support and maintenance of the State Charity Hospital at Jackson, Mississippi: Provided, that this hospital shall be used only for charity patients: Provided further, that the superintendent shall devote his entire time to the duties of his office."

"Section 2 provides how the funds appropriated by section 1 are to be drawn and expended. The Governor undertook to approve the above act, except that part embraced in the words calling for the entire time of the superintendent, which he disapproved on the ground that it violated section 69 of the Constitution, and this he had no authority to do. *State* v. *Holden,* 76 Miss. 158, 23 So. 643.

"The auditor, doubting whether the act so treated by the Governor was operative, wisely refused to issue his warrant for an item attempted to be drawn as provided by section 2, and upon his refusal the petition for writ of mandamus was filed by the superintendent to test the question so raised, and the attorney general filed a demurrer to the petition, which presents a delicate and interesting question.

"If the provision disapproved is a condition to payment of the money appropriated or any part of it, however unreasonable it might appear, or if the words disapproved would create a law, if free from constitutional objection, or if the words disapproved could have any effect if approved, or if the legislature reasonably might not have passed the bill without the disapproved words, the demurrer should be sustained, as the Governor has no power to amend or alter an act by striking out any of its parts, whether valid or invalid, except items in an appropriation bill, as provided by section 73 of our Constitution. *State* v. *Holder, supra.*

"The appropriation for salaries and repair of the Industrial Institute and College for 1898 and 1899 contained the provision that no part of the money appropriated should be available unless the board of trustees should first adopt certain stipulated rules and by-laws, and this stipulation on which the appropriation was suspended, the Governor disapproved and attempted to approve the bill in all other respects. Under this act, if the bill had been approved as passed, no money

could have been lawfully paid unless it was first made
to appear that the condition has been met.

"In the 1920 appropriation bill for support and
maintenance of the State Charity Hospital there is no
condition precedent to payment. The money could not
be lawfully withheld, had the bill been approved in
full, providing inquiry, whether or not the superintend-
ent devoted his entire time to his official duties. The
words 'Provided further' in the act are equivalent to
and only mean 'enacted further,' and does not make
payment conditional upon a showing that the superin-
tendent gave his undivided time to his official duties.

" 'It does not necessarily follow because the term
"provided" is used (in a statute) that which may suc-
ceed it is a proviso, though that is the form in which
an exception is generally made to, or a restraint or
qualification imposed on the enacting clause. It is the
matter of the succeeding words, and not the form,
which determines whether it is or not a technical pro-
viso.' *Carroll* v. *State,* 58 Ala. 396.

" 'The word "provided" is often used in a statute as
a conjunction to an independent paragraph.' *Carter* v.
*United States,* 143 Fed. 256, 74 C. C. A. 394; *Georgia
Railroad Co.* v. *Smith,* 128 U. S. 174, 9 Sup. Ct. 47, 32
L. Ed. 377.

"If the legislature had passed a separate act provid-
ing only that the superintendent of the State Charity
Hospital should devote his entire time to the duties of
his office, would such act have any legal effect? If it
would the demurrer should be sustained.

"Attempted legislation that creates no change, and
is not enforceable, and which might have been omitted
without effect upon persons or property, is not law.

"Section 267 of our Constitution provides: 'No per-
son elected or appointed to any office or employment of
profit under the laws of this state, or by virtue of any
ordinance of any municipality of this state, shall hold

such office or employment without personally devoting his time to the performance of the duties thereof.'

"The only difference in the constitutional provision and the clause of the act of 1920 disapproved is the word 'entire,' making the act read, 'shall devote his entire time to 'the duties of his office.' Rigidly construed, a performance of such clause is impossible. No officer could survive without time to eat, sleep, and take necessary recreation. Fairly and reasonably construed, the constitutional provision is as broad as the attempted legislation.

"If the legislature attempted to prevent the superintendent from engaging in the practice of his profession beyond administering to charity patients, then they entered upon a field already covered by the Constitution. *Fairley* v. *Western Union Tel. Co.*, 73 Miss. 6, 18 So. 796.

"The most that can be said of the provision under consideration is that it presents the legislative view as to the duties imposed upon the superintendent, and, as it creates no law and provides no penalty or provision for removal from office, it has no more force than a joint resolution to that effect.

"It is certain that the legislature would not have abandoned this institution and neglected to make provision for it unless the paragraph disapproved remained in the act, in view of the necessities of the case (*Adams* v. *Standard Oil Co.*, 97 Miss. 879, 53 So. 692), and in view of the fact that what they inserted in the bill was a part of the Constitution that they could neither add to nor substract from.

"There is no difference in law between the bill as passed and that approved and put into effect."