## State Tax Equalization Board Membership

ADAMS, Deputy Attorney General, February 9, 1948. —We have your request to be advised concerning whether you may lawfully approve requisitions for the payment of salaries of two members of the State Tax Equalization Board who respectively hold the office of county commissioner and county treasurer.

Article XII, section 2 of the Constitution of Pennsylvania provides as follows concerning incompatible offices:

"No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The General Assembly may by law declare what offices are incompatible."

This provision prohibiting a person from holding both a State and a Federal office is self-executing without legislative aid: Commonwealth ex rel. Crow v. Smith, 343 Pa. 446 (1942). However, under the concluding sentence of article XII, sec. 2, it has been held that ". . . the courts are not permitted to hold offices incompatible merely because the Legislature has failed to act, . . .": Commonwealth ex rel. Schermer v. Franek, 311 Pa. 341, 347 (1933). Nevertheless, it has been held that dual office holding will not be sanctioned where the two offices are such that it would be against public policy to permit one person to hold both

of them: Commonwealth ex rel. v. Snyder, 294 Pa. 555 (1929) ; Commonwealth ex rel. Adams v. Holleran, 350 Pa. 461 (1944).

There does not appear to be any statutory provision in the General County Law or elsewhere prohibiting a county commissioner or a county treasurer from holding an appointive office under the State Government.

There is likewise no provision in the Act of June 27, 1947, P. L. 1046, creating the State Tax Equalization Board expressly forbidding a board member from holding a county office. However, section 2(*b*) of that act significantly provides that:

"Each member of the board shall devote *his entire time* to the duties of his office." (Italics supplied.)

In the case of this newly created board this requirement is particularly appropriate. There are 2,544 school districts in the Commonwealth, the taxable real property of each of which must be revalued by July 1, 1949, (section 14) and annually thereafter. The magnitude of this undertaking more than adequately demonstrates that the board members must exclusively devote their time to the board unhampered by other governmental responsibilities.

Section 7 of the act provides that the board shall have power and its duties shall be:

"(1) To determine the market value of taxable real property in each of the school districts and to conduct investigations, require information and have access to whatever public records are necessary in making each such determination.

"(2) To require the county commissioners of each county to furnish to it, monthly, a list of all conveyances or other transfers of real estate, or any interest therein, recorded within such county during the preceding month, stating the value of the Federal tax stamps affixed to the deed for each such conveyance, and the assessed valuations for county tax purposes of such real estate.

" . . .

"(7) To subpœna State and local officials and to require from them such information as may be necessary for the proper discharge of its duties."

Section 16 of the act provides that:

"Before granting any special aid to any school district, the Superintendent of Public Instruction shall submit the request therefor to the board. The board shall make its recommendations with respect thereto in so far as the same is affected by the district's ability to raise funds by taxation. Before making any such recommendation, the board shall carefully investigate and study the financial circumstances of the district and whether or not it has exhausted its available taxing power not only on real property, but also on all other available property and subjects of taxation, and that collection of such taxes is being effectively made and enforced. Such recommendations shall be for the advice of the Superintendent of Public Instruction in passing on such requests."

Section 9 provides that the county commissioners of each county on the 15th day of each month shall prepare, certify and deliver to the board a list of all conveyances of real estate, and paragraph (b) of the same section reads:

"(b) The board shall pay to the county commissioners of each county, the sum of ten cents (10c) for each such conveyance or transfer of real estate on each list so prepared, certified and delivered to the board for its use."

Section 2 of the act provides for an annual salary of $10,500 for the chairman of the board and each other member thereof an annual salary of $10,000.

In our opinion, the legislature has inserted this requirement that the board member devote his entire time to his duties as a condition to his incumbency; and this condition plainly precluded a board member from conducting the highly important and demanding

duties of a county commissioner or a county treasurer simultaneously with his duties on the board. The term "entire time" connotes undivided and undiminished concentration of one's intelligence, industry and initiative to the task at hand.

Miller v. Walley, 122 Miss. 521, 533, 84 So. 466, 468 (1920), construed a bill which read " '. . . the superintendent shall devote his entire time to the duties of his office' ". The court said (p. 535) :

"We think the word 'entire' in the statute means something and imposed upon the superintendent obligations of greater extent than were imposed on him before, and that the legislature had a right to require the full time of an officer or superintendent of one of its institutions, and at least, the statute was intended to remove from the field of disputation the amount of time that was necessary for the superintendent . . . to devote to the duties of that position."

Quoting from 11 Am. & Eng. Encyclopedia of Law 48, the court continued:

" ' "Entire" means whole, undivided; not participated in by others.' "

See also First Calumet Trust & Savings Bank et al. v. Rogers et al., 289 F. 953 (C. C. A. 7th, 1923), where the court construed a contract of employment between a private corporation and its executive officer requiring him to devote his entire time to the business of his employer. The court said at page 958:

"The entire time . . . under the employment meant his entire capacity in mental attainments and experience."

Since we are of the opinion that the "entire time" condition in the Act of 1947, supra, precludes a member of the State Tax Equalization Board from holding the office of county commissioner or county treasurer, it follows that present board members cannot receive compensation from the State Treasury so long as they also hold their respective county offices. This conclu-

sion renders unnecessary the determination of any further question of incompatibility under statute or public policy. In accordance with the opinion in the case of Commonwealth .ex rel. v. Snyder, supra, it would appear that the county commissioner or the county treasurer who has been appointed as a member of the State Tax Equalization Board should be given a reasonable opportunity to make an election between the respective offices.

We are therefore of the opinion, and you are accordingly advised, that you may not lawfully approve requisitions for the salary of any member of the State Tax Equalization Board who holds the position of county commissioner or county treasurer, until such time as he resigns from his county office, or his term as county officer expires.