STATE EX REL. WISCONSIN TELEPHONE COMPANY, Plaintiff, vs. HENRY, State Treasurer, and others, Defendants.

*April 24—April 30, 1935.*

304

For the plaintiff there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Edwin S. Mack* and *Vernon Swanson,* all of Milwaukee.

For the defendants there was a brief by the *Attorney General* and *Benjamin Poss,* special counsel, and oral argument by *Mr. Poss* and *Mr. Joseph P. Brazy* of Milwaukee.

FRITZ, J.   The allegations in the original petition, and in the subsequent complaint, sufficiently disclose the existence of a genuine and justiciable controversy because of which the plaintiff is entitled to the maintenance of an action for declaratory relief.   On the plaintiff's application for leave to commence an original action or proceeding in this court for that purpose, its right to do so was challenged.   Upon a hearing and due consideration of that challenge, we concluded that it was sufficiently shown that acts which materially affected state-wide interests of the people at large were about to be performed by state officers in their official capacity, either contrary to law, or under the terms of a purported law, which was alleged not to have been enacted in the manner required by constitutional provisions; that a valid law authorizing acts and immediate action thereunder was absolutely necessary to enable the state to promptly provide and

contribute enormous sums of money required for immediate emergency relief for multitudes in distress, ·because of the existing state-wide poverty and unemployment; and that, under those and other facts of which we may take judicial notice, the situation is such, in a matter *publici juris,* that the remedy by an action commenced in a lower court is entirely inadequate. Consequently, it was absolutely necessary and proper for this court to take original jurisdiction of the controversy, in respect to a matter clearly *publici juris,* as to whether Bill No. 48 A was validly passed, signed, and published, so as to result in the enactment of ch. 15, Laws of 1935, as a valid law (*Income Tax Cases,* 148 Wis. 456, 498, 134 N. W. 673, 135 N. W. 164), leaving, in the event of an adjudication that the law was validly enacted, the determination of other issues as to the constitutionality or construction of provisions in the law, and which involve mere private rights or interests, to the courts which are provided for the vindication of private rights.

Bill No. 48 A, as well as ch. 15, Laws of 1935, is entitled, "An Act to raise revenues for emergency relief purposes, and making appropriations." The obvious,˙ primary, and underlying purpose of the bill and the act, as finally published, was the appropriation by the state of funds which were absolutely necessary for immediate emergency relief. To enable the state to raise the enormous amount of the required appropriation, it was equally necessary to enact provisions for additional state revenue. To effect those purposes, Bill No. 48 A was introduced by the joint committee on finance of the legislature. Secs. 1 and 9 of the bill, as thus introduced, purported to state the intent of the legislature in enacting the bill; secs. 2 to 7, which were appropriately headed, *e. g.,* "Emergency relief tax on incomes," etc., contained the provisions for raising the necessary revenue; and sec. 8, which was entitled, "Appropriations," contained provisions appropriating "from the general fund for relief pur-

poses" the entire receipts of the revenue raised under secs. 2 to 7, and the excess in receipts, above the appropriations made, under prior emergency tax laws (including provisions in ch. 363, Laws of 1933) ; and all funds made available to the state for relief by acts of congress. In that connection it was provided in sec. 8 (1), as originally introduced and as finally passed, that "the amount herein appropriated for relief purposes shall be allotted and used as provided by law." By amendments, there were subsequently added to the bill, before the final passage thereof, subs. (3) to (9), inclusive, of sec. 8, and those subsections provided for the distribution, with some specific directions as to the manner and purposes thereof, of all moneys appropriated in sub. (1) of sec. 8 (less certain minor deductions specified in sub. (2) thereof, which are not now material), through an agency thereby created and designated, "The Governor's Outdoor Relief Administration;" and, in that connection, sub. (7) of those subsections provided for the repeal of the provisions (excepting those relating to loans to needy students) in ch. 363, Laws of 1933, which conferred duties and powers upon the industrial commission, as the state's agency for the distribution or administration of relief funds.

Upon the presentation of the bill, as passed, to the governor, pursuant to sec. 10, art. V, Wisconsin constitution (which is printed in the margin),[1] he approved of all parts

---

[1] Sec. 10, art. V, Wisconsin constitution: "Every bill which shall have passed the legislature shall, before it becomes a law, be presented to the governor; if he approve, he shall sign it, but if not, he shall return it, with his objections, to that house in which it shall have originated, who shall enter the objections at large upon the journal and proceed to reconsider it. *Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law, and the part objected to shall be returned in the same manner as provided for other bills.* If, after reconsideration, two-thirds of the members present shall agree to pass the bill, *or the part of the bill objected to,* it shall be sent, together with the objections, to the other house, by which it shall likewise be recon-

thereof excepting secs. 1 and 9 (purporting to declare the legislature's intent by the act), and subs. (3) to (9), inclusive, of sec. 8. Thereupon the governor duly returned those secs. 1 and 9, and subs. (3) to (9), inclusive, of sec. 8, together with his objections, to the assembly, as vetoed, and that house then refused to pass those parts of the bill. Plaintiff contends that the governor's disapproval of parts of the bill, as originally passed, by the legislature, and his approval of the remaining parts thereof, was unauthorized under sec. 10, art. V, Wisconsin constitution, because the constitutional grant of power to the governor by that section to approve parts of an appropriation bill and to disapprove parts thereof does not grant power to him to approve the appropriation, and disapprove a proviso or condition inseparably connected to the appropriation, nor to disapprove parts of an appropriation bill that are not an appropriation.

In passing upon those contentions, we find it unnecessary to decide in this case whether the governor is empowered to disapprove a proviso or condition in an appropriation bill, which is inseparably connected with the appropriation, because, upon analyzing the terms of the bill in question, we have concluded, for reasons hereinafter stated, that the parts which were disapproved by the governor were not provisos or conditions which were inseparably connected to the appropriation. If they had been, the decision in *State ex rel. Teachers & Officers v. Holder,* 76 Miss. 158, 23 So. 643,

---

sidered, and if approved by two-thirds of the members present it shall become a law. But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the members voting for or against the bill *or the part of the bill objected to,* shall be entered on the journal of each house respectively. If any bill shall not be returned by the governor within six .days (Sundays excepted) after it shall have been presented to him, the same shall be a law unless the legislature shall, by their adjournment, prevent its return, in which case it shall not be law."

Note: The portions in italics were added by an amendment adopted in 1930.

would afford support for the plaintiff's contention. However, in view of our conclusion that the parts objected to by the governor were not provisos or conditions inseparably connected to the appropriation, there remains the plaintiff's contention that the authority granted under sec. 10, art. V, Wisconsin constitution, in respect to an appropriation bill, does not empower the governor to disapprove parts thereof that are not an appropriation. That the bill is an appropriation bill within the meaning of that term, as used in sec. 10, art. V, Wisconsin constitution, is not questioned. On the other hand, the words used in the provisions of that section which are involved in this action, are so plain and unambiguous, in so far as the application thereof in the case at bar is concerned, that there is no occasion for any extended discussion here as to the history or nature of the veto or partial veto power. Interesting and excellent discussions of those matters, as well as the pernicious practices and evils in connection with the enactment of legislation, which have resulted in constitutional provisions, under which the executive veto power was enlarged to include the right to a partial veto in some respect, will be found in *Fairfield v. Foster,* 25 Ariz. 146, 214 Pac. 319; *Commonwealth ex rel. Elkin v. Barnett,* 199 Pa. 161, 48 Atl. 976, 55 L. R. A. 882, 884; *Wood v. Riley,* 192 Cal. 293, 219 Pac. 966; *Fergus v. Russel,* 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120; *State ex rel. Teachers & Officers v. Holder, supra; Fulmore v. Lane,* 104 Tex. 499, 140 S. W. 405; *Mills v. Porter,* 69 Mont. 325, 222 Pac. 428; *State ex rel. Jamison v. Forsyth,* 21 Wyo. 359, 133 Pac. 521; *People ex rel. Churchyard v. Board of Councilmen* (Super. Buff.), 20 N. Y. Supp. 51.

It is true that in most of the states, which permit a partial veto, the language commonly used in constitutional provisions authorizes the exercise of such executive disapproval only as to one or more of the "items" or "any item of appropriation" of an appropriation bill embracing distinct items.

(See provisions cited in margin.) [1] Provisions of that limited character were construed in some of the cases cited above, and also in *Porter v. Hughes,* 4 Ariz. 1, 32 Pac. 165; *Callaghan v. Boyce,* 17 Ariz. 433, 153 Pac. 773; *Black & White Taxicab Co. v. Standard Oil Co.* 25 Ariz. 381, 218 Pac. 139; *Regents of State University v. Trapp,* 28 Okla. 83, 113 Pac. 910. Those decisions, however, do not constitute decisive precedents for the construction of the broader term "part" which is used in sec. 10, art. V, Wisconsin constitution.

Somewhat more similar is the language authorizing the governor to disapprove "any one or more items or sections," which is used in sec. 16, art. V, Illinois constitution; and "any item or items or part or parts," which is used in sec. 9, art. IV, Wyoming constitution, but in neither of those states does there appear to be any reported decision in respect to the executive power to veto some "section" or "part" other than a part of a monetary item. In respect to the latter provision, it was held in Illinois and Wyoming, in *Fergus v. Russel, supra; People ex rel. State Board v. Brady,* 277 Ill. 124, 115 N. E. 204; and *State ex rel. Jamison v. Forsyth,*

---

[1] Arizona Const., art. V, sec. 7; California Const., art. IV, secs. 16, 34; Colorado Const., art. IV, sec. 12; Delaware Const., art. III, sec. 18; Florida Const., art. IV, sec. 18; Georgia Const., art. V, sec. 1, par. 16; Idaho Const., art. IV, sec. 11; Kansas Const., art. II, sec. 14; Massachusetts Const., amend. LXIII, sec. 5; Michigan Const., art. V, sec. 37; Minnesota Const., art. IV, sec. 11; Missouri Const., art. V, sec. 13; Montana Const., art. VII, sec. 13; Nebraska Const., art. V, sec. 15; New Jersey Const., art. V, sec. 7; New York Const., art. IV, sec. 9; Ohio Const., art. II, sec. 16; Oklahoma Const., art. VI, sec. 12; Oregon Const., art. V, sec. 15a; Pennsylvania Const., art. IV, sec. 16; South Dakota Const., art. IV, sec. 10; Texas Const., art. IV, sec. 14; Utah Const., art. VII, sec. 8; Virginia Const., art. V, sec. 76; West Virginia Const., art. VII, sec. 15; Wyoming Const., art. IV, sec. 9.

21 Wyo. 359, 133 Pac. 521, that the word "part" in their constitutional provisions authorized the disapproval of but part of an item which had been appropriated as a unit. The same conclusion was reached in Pennsylvania, in *Commonwealth ex rel. Elkin v. Barnett, supra,* under a provision which gave to the governor power to disapprove "any item or items of any bill, making appropriations of money, embracing distinct items."

On the other hand, the nearest approaches to conferring upon the executive partial veto power in terms most similar to those used in sec. 10, art. V, Wisconsin constitution, in respect to appropriation bills, seem to be in sec. 73, Mississippi constitution 1890; sec. 88, Kentucky constitution; sec. 22, art. IV, New Mexico constitution; sec. 80, art. III, North Dakota constitution; sec. 12, art. III, Washington constitution. In the provision last cited, the partial veto power is conferred as to "one or more sections or items," instead of to a "part or parts," and there are no words in that provision which limit the exercise of that power to appropriation bills. That provision was involved in *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 107 Pac. 316, and *Cascade Telephone Co. v. State Tax Comm.* 176 Wash. 616, 30 Pac. (2d) 976, but aside from, in effect, construing the word "section" as synonymous to our word "parts," in the case last cited, neither of the decisions in those cases is in point on the issue involved herein.

We have not found any reported cases construing the similar constitutional provision in Mississippi, Kentucky, New Mexico, and North Dakota, with the exception of *State ex rel. Teachers & Officers v. Holder, supra,* and *Miller v. Walley,* 122 Miss. 521, 84 So. 466. As in those cases, the parts of a bill which were disapproved by the executive prescribed conditions upon which the payment of the appropriation was expressly made contingent, so that the parts

vetoed were clearly integral and inseparable parts of the appropriation made in the bill, they afford no precedent as to the proper construction of the partial veto provision in sec. 10, art. V, Wisconsin constitution, in respect to the separable parts in Bill No. 48 A. On the other hand, if, in conferring partial veto power, by the amendment of sec. 10, art. V, Wisconsin constitution, in 1930, it was intended to give the executive such power only in respect to an item or part of an item in an appropriation bill, then why was not some such term as either "item" or "part of an item" embodied in that amendment, as was theretofore done in similar constitutional provisions in so many other states, instead of using the plain and unambiguous terms "part" and "part of the bill objected to," without any words qualifying or limiting the well-known meaning and scope of the word "part?" As the meaning of that word, as used in sec. 10, art. V, Wisconsin constitution, is not thus qualified or limited, or otherwise rendered doubtful by reason of context, or uncertainty as to application to a particular subject matter, or otherwise, there is nothing because of which that word, as used in that section, is not to be given its usual, customary, and accepted meaning, which, as defined in Webster's New International Dictionary (2d ed.), page 1781, is "One of the portions, equal or unequal, into which anything is divided, or regarded as divided; something less than a whole; a number, quantity, mass, or the like, regarded as going to make up, with others or another, a larger number, quantity, mass, etc., whether actually separate or not; a piece, fragment, fraction, member, or constituent." Under those circumstances, what constitutes a "part" of an appropriation bill, and is therefore subject to a partial veto under sec. 10, art. V, Wisconsin constitution, is not difficult to ascertain in this case, if, as stated, the provisions in the disapproved parts of Bill No. 48 A were not provisos or con-

ditions upon which the appropriation in the approved portions was made dependent or contingent.

As that bill is worded, there is not only an entire absence of any expressed proviso or condition, or otherwise expressly stated connection between the parts disapproved and the parts which were approved by the governor, but, on the other hand, the parts approved, as they were in the bill, as it was when originally introduced, and as they continued therein at all times and are still in ch. 15, Laws of 1935, constitute, in and by themselves, a complete, entire, and workable law, for the appropriation for relief purposes, of the money to be raised, as tax revenues thereunder, and for the allotment and use of that appropriation (excepting as to the relatively small amounts otherwise specifically allotted in subds. (a), (am), (b), (c), of sub. (2) and sub. (2a), of sec. 8), through the agency of the industrial commission, "as provided by law." That the words "shall be allotted and used as provided by law," which are in sec. 8 (1) of ch. 15, Laws of 1935, were not intended, as contended by plaintiff, to mean or refer solely to the provisions embodied in the bill by amendment, as sub. (3), of sec. 8, is obvious when it is noted that those very words were and continued to be in that sub. (1), sec. 8, of the bill from the time it was introduced; and as there was then no other specific provision in the bill for the allotment or use through any other agency of the amount appropriated for relief purposes thereunder, the only possible meaning that could have been intended by those words was to refer thereby to the existing law, which was ch. 363, Laws of 1933, under which the industrial commission was constituted the state agency for that purpose.

It may well be that sec. 10, art. V, Wisconsin constitution, was not intended to empower the governor, in vetoing parts of an appropriation bill, to dissever or dismember a single piece of legislation which is not severable, or so as to leave

merely provisions which are not a complete or fitting subject for a separate enactment by the legislature. Although that may not have been intended, there is nothing in that provision which warrants the inference or conclusion that the governor's power of partial veto was not intended to be as coextensive as the legislature's power to join and enact separable pieces of legislation in an appropriation bill. As the legislature can do that in this state, there are reasons why the governor should have a coextensive power of partial veto, to enable him to pass, in the exercise of his *quasi*-legislative function, on each separable piece of legislation or law on its own merits. That is not necessary in many states because they have constitutional provisions which prohibit the legislature from passing a bill which contains more than one subject. Wisconsin, however, has no such prohibition except as to private and local bills (sec. 18, art. IV, Wis. Const.). As far as general legislation is concerned, the legislature may, if it pleases, unite as many subjects in one bill as it chooses. Therefore, in order to check or prevent the evil consequences of improper joinder, so far, at least, as appropriation bills are concerned, it may well have been deemed necessary, in the interest of good government, to confer upon the governor, as was done by the amendment in 1930 of sec. 10, art. V, Wisconsin constitution, the right to pass independently on every separable piece of legislation in an appropriation bill.

As an additional reason why the disapproved parts of the bill are to be deemed separable from the approved portions of the bill, it must be noted that in sec. 10 of the bill as originally introduced, as well as in the bill as passed by the legislature and also in ch. 15, Laws of 1935, there is the express provision that "If any provision of this act, or the application thereof to any person or circumstance, is held invalid, the remainder of this act and the application of such

provisions to other persons or circumstances, shall not be affected thereby." That express provision certainly negatives any possible inference that the existence, as an effective and enforceable law, of those portions of the bill which have been approved, and which constitute, in and of themselves, a complete, consistent and workable scheme and law, is dependent or contingent upon all of the provisions of the bill, as passed by the legislature, becoming effective as an entire law. To hold otherwise would subordinate, without any expressed legislative intention to that effect, the imperatively necessary, and complete and highly important provision for the appropriation and raising of the funds required for the immediate relief of the impoverished and distressed, to the merely incidental provisions intended to substitute a new agency and mode for distribution in place of that which was provided for and in effect by virtue of ch. 363, Laws of 1933. It is well established that the elimination of even material provisions in an act as enacted, because of the invalidity of such provisions, does not render the remaining valid provisions thereof ineffective, if the part upheld constitutes, independently of the invalid portion, a complete law in some reasonable aspect, unless it appears from the act itself that the legislature intended it to be effective only as an entirety and would not have enacted the valid part alone. So we said in *State ex rel. Reynolds v. Sande,* 205 Wis. 495, 503, 238 N. W. 504, 507:

"If a statute consists of separable parts and the offending portions can be eliminated and still leave a living, complete law capable of being carried into effect 'consistent with the intention of the legislature which enacted it in connection with the void part,' the valid portions must stand. This is the rule and it has been consistently followed."

See also *State ex rel. Buell v. Frear,* 146 Wis. 291, 307, 131 N. W. 832; *Income Tax Cases,* 148 Wis. 456, 518, 134 N. W. 673, 135 N. W. 164; *Brittingham & Hixon L. Co.*

*v. Sparta,* 157 Wis. 345, 352, 147 N. W. 635. Manifestly, if the parts vetoed had been approved, but thereafter held unconstitutional, there would have been no difficulty in considering them entirely eliminated as independent and separable provisions of the act, and in upholding the remainder thereof valid, as a complete law capable of being carried into effect, independently of the eliminated parts. As the mere declarations in secs. 1 and 9 of the bill, which were vetoed, as to what the legislature intended to do by and under the act, would not have resulted, even if enacted as in the bill, in any enforceable rule of conduct or action which would have constituted law, those declarations were also not so inseparably connected with the parts of the bill which were approved that enforcement of the latter as law can be considered dependent or contingent upon the validity or enactment of those declarations as parts of the bill.

It follows that, in approving those parts of the bill which now constitute ch. 15, Laws of 1935, and in disapproving the other parts of the bill which were not essential, integral, and interdependent parts of those which were approved, the governor was acting entirely within his constitutional prerogative under sec. 10, art. V, Wisconsin constitution. Therefore, upon the return of the parts vetoed by the governor to the assembly, and the refusal of two-thirds of the members thereof to pass those parts over the governor's veto, only those portions of the bill which had been approved by the governor constitute the legislative enactment, which it became the duty of the secretary of state to cause to be published in accordance with sec. 21, art. VII, Wis. Const., and sec. 35.64, Stats.

For the reasons stated above, the following mandate was duly filed on April 26, 1935.

*By the Court.*—It is declared and adjudged:

(1) That ch. 15, Laws of 1935, which consists of those parts of Bill No. 48 A that were passed by the legislature

at its biennial session in 1935, which were not vetoed, but were approved by the governor upon the presentation of said bill to him pursuant to sec. 10, art. V, of the state constitution, was validly, and in accordance with said constitutional provision, approved and signed by him.

(2) That the parts of said bill which were not thus approved, but were vetoed by the governor under said constitutional provision, were, in accordance therewith, duly vetoed and returned to the assembly with his objections thereto, and were then refused passage.

(3) That by virtue of said passage by the legislature and said approval by the governor, ch. 15, Laws of 1935, was validly enacted, and, upon the publication thereof, in accordance with sec. 21, art. VII, of the constitution, and sec. 35.64, Stats., became and now is in force and effect as law.

No questions concerning the validity of ch. 15, Laws of 1935, other than those relating to the approval, enactment, and publication thereof, are now determined.