ERNEST C. KEPPLER, Chairman, Committee on Senate Organization
Section 3 of Senate Bill 598 (ch. 298, Laws of 1973) was vetoed in part by the Governor. Section 3, as passed by the legislature, provided:
 "Section 3. 20.370 (2) (vr) of the statutes is created to read:
 "20.370 (2) (vr) Snowmobile law enforcement. From interest earnings on snowmobile registration, the amounts in the schedule for departmental law enforcement under ch. 350 not to exceed $130,000 or the amount of interest earned in any fiscal year from snowmobile registration fees, whichever is less."
As partially vetoed, section 3 provides:
 "20.370 (2) (vr) Snowmobile law enforcement. [From interest earnings on snowmobile registration]*, the amounts in the schedule for departmental law enforcement under ch. 350 not to exceed $130,000 [or the amount of interest]* earned in any fiscal year from snowmobile registration fees, [whichever is less]*."
* [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
You ask, on behalf of the Senate Committee on Organization, my opinion of the effect of such partial veto, i.e., does it constitute an objection to all of section 3, requiring the return of section 3 in its entirety to the legislature for reconsideration.
The Governor's authority to veto parts of an appropriation bill is found in Art. V, sec. 10, Wis. Const., set out in part below:
 ". . . Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law, and *Page 314 
the part objected to shall be returned in the same manner as provided for other bills. . . ."
The requirements for a valid partial veto were set out as follows in State ex rel. Finnegan v. Dammann (1936), 220 Wis. 143,146, 264 N.W. 622:
 "In the previous case of State ex rel. Wisconsin Tel. Co. v. Henry, 218 Wis. 302, 260 N.W. 486, this court for the first time had occasion to consider the scope of the 1930 constitutional amendment. It was there held: (1) That the 1930 amendment permits the veto by the governor of any separable part of an appropriation bill; and (2) that this power to partially veto exists, although the part vetoed does not deal with appropriations. . . ."
Because section 3 contains an appropriation, only one question remains to be answered: Is that portion vetoed a "separable part"?
In State ex rel. Wisconsin Tel. Co. v. Henry (1935), 218 Wis. 302,260 N.W. 486, an extensive discussion of what constitutes a "separable part" was conducted by the court. In that discussion, set out in part below, the court made it clear that a "separable part" did not include contingencies or conditions placed on the appropriation by the legislature:
 "We have not found any reported cases construing the similar constitutional provision in Mississippi, Kentucky, New Mexico, and North Dakota, with the exception of State ex rel. Teachers Officers v. Holder, supra, and Miller v. Walley, 122 Miss. 521, 84 So. 466. As in those cases, the parts of a bill which were disapproved by the executive prescribed conditions upon which the payment of the appropriation was expressly made contingent, so that the parts vetoed were clearly integral and inseparable parts of the appropriation made in the bill, . . . what constitutes a `part' of an appropriation bill, and is therefore subject to a partial veto under sec. 10, art. V, Wisconsin constitution, is not difficult to ascertain in this case, if, as stated, the provisions in the disapproved parts of Bill No. 48 A were not provisos or conditions upon which the appropriation in the approved portions was made dependent or contingent." pp. 312-313-314. *Page 315 
Section 3, as passed by the legislature, would appropriate for enforcement purposes the lesser of $130,000 or the amount of interest earned from snowmobile registration fees. The effect of the veto would be to appropriate, in any year, $130,000 for enforcement regardless of the amount of interest earned on registration fees, assuming those fees total more than $130,000. Thus, a contingency or condition on the amount appropriated in any year was removed by the partial veto. Therefore, such a partial veto was not authorized by Art. V, sec. 10, Wis. Const., and was invalid.
My conclusion of invalidity is supported by the purpose of Art.V, sec. 10, Wis. Const., as described in State ex rel. Martin v.Zimmerman (1940), 233 Wis. 442, 447-448, 289 N.W. 662:
 ". . . Its purpose was to prevent, if possible, the adoption of omnibus appropriation bills, logrolling, the practice of jumbling together in one act inconsistent subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits, with riders of objectionable legislation attached to general appropriation bills in order to force the governor to veto the entire bill and thus stop the wheels of government or approve the obnoxious act. Very definite evils were inherent in the lawmaking processes in connection with appropriation measures. Both the legislature and the people deemed it advisable to confer power upon the governor to approve appropriation bills in whole or in part, . . ."
The probable effect of the partial veto of section 3 would be to increase the amount appropriated in any year contrary to the purpose of a partial veto, i.e., the reduction or elimination of individual appropriations.
The effect of an invalid partial veto was considered by the Wisconsin Supreme Court in only one case, State ex rel. Finneganv. Dammann (1936), 220 Wis. 143, 264 N.W. 662. The result of that consideration was as follows at pages 149-150:
 "The next question is as to the effect of the partial veto. We have been favored with able argument to the effect that the veto being a nullity, the approval of the governor must be considered as unqualified. We are satisfied that this contention is not *Page 316 
sound. It is conceded by both plaintiff and defendant that in order to become a law this act required the governor's approval. Both sound principle and the decisions bearing upon the question establish that whether or not an invalid partial veto results in an act being in force or wholly inoperative, depends entirely upon whether the act could become a law without the governor's sanction and approval, or whether it required this approval before it could become law. In the former case, the partial veto being ineffective as a veto and no approval being required, the law is in force. In the latter case, an express approval of the law as enacted being required and only a qualified approval given, the act wholly fails. Nowell v. Harrington, 122 Md. 487, 89 Atl. 1098; Wood v. State Administrative Board, 255 Mich. 220, 238 N.W. 16; Mills v. Porter, 69 Mont. 325, 222 Pac. 428, 35 A.L.R. 592; State ex rel. Jamison v. Forsyth, 21 Wyo. 359, 133 Pac. 521; State ex rel. Teachers Officers of Ind. Inst. and College v. Holder, 76 Miss. 158, 23 So. 643; Regents of State Univ. v. Trapp, 28 Okla. 83, 113 Pac. 910.
 "However invalid and nugatory the veto may have been, it did in fact operate to destroy the unequivocal character of the governor's approval. This question is not to be answered by conjecture or speculation whether the governor would or would not have signed the act had he correctly determined the extent of his powers partially to veto it. The question is whether, as a matter of fact, the bill as enacted had the governor's approval. The partial veto, however invalid, indicates that it did not.
 "Since the act required the approval of the governor, and did not receive it, the conclusion is inevitable that Bill No. 312, S., never became a law and mandamus does not lie to compel its publication by the defendant." (Emphasis added.)
In State ex rel. Finnegan v. Dammann, the partial veto was invalid because the bill was not an appropriation bill and therefore not subject to partial veto. The Governor could only approve or veto the bill in its entirety. The court, as indicated by the quoted passage, would not speculate on the Governor's response had he realized that a veto in part was not possible and therefore held the entire bill invalid. In contrast, Senate Bill 598 is a proper subject for partial veto. The *Page 317 
Governor approved all of the bill except a portion of section 3, and that approval in part would have been proper had the Governor "correctly determined the extent of his powers partially to veto it." Therefore, we need not speculate as to the Governor's intent with respect to those parts of the bill previously approved. They became law as Art. V, sec. 10, Wis. Const., provides:
". . . the part approved shall become law . . ."
However, the ascertaining of the Governor's reaction to section 3 "had he correctly determined the extent of his powers partially to veto it" would require speculation, and thus, I must conclude that the Governor objected to all of section 3. Therefore, section 3 must "be returned in the same manner as provided for other bills" for legislative reconsideration.
RWW:JEA