I write to note my disagreement with the majority's decision in all respects. In so doing, I would first express my concurrence with that portion of Chief Justice Hawkins' well reasoned concurring in part, dissenting in part opinion, that the attempted amendment of the 27 appropriation bills was an issue that should not have been decided by this Court, as it was not argued on appeal by the Governor. I am also in agreement with that part of Justice Dan Lee's detailed concurring in part, dissenting in part, opinion finding that House Bills 1613 and 1502, by their clear intent to appropriate monies from the State Treasury, constituted both revenue and appropriation bills.
Having agreed with Justice Lee's analysis and resulting conclusion that House Bills 1613 and 1502 are appropriation bills at least in part, they are thus subject to the Governor's partial veto authority set forth in Miss. Const. art. 4, § 73.
Beginning my analysis from this point, I would write to further express my opinion that as a result of the Governor properly exercising his § 73 partial veto authority, the two bills became law not in their original form, but with those items properly vetoed being deleted and their corresponding *Page 1048 
amounts subtracted from the totals originally allocated by the Legislature. Further, regarding the single item which the Governor improperly attempted to veto, by his act of crossing through the Legislature's stated allocation and substituting a lower figure of his own, as a nullity, accordingly became law as if such action had not been taken.
Decisions of this Court, including Holder, relied upon by the majority to reject the Governor's authority to exercise his veto authority are not particularly helpful to this case. However, other jurisdictions which have considered a governor's authority to veto and to partially veto legislation offer guidance.
The case of State Ex. Rel. Wisconsin Teleph. Co. v. Henry,218 Wis. 302, 260 N.W. 486 (1935) is particularly instructive. Therein, the Legislature passed Bill 48A, — "An Act to raise revenues for emergency relief purposes, and making appropriations." Id., 260 N.W. at 489. Bill 48A thus was on its face a hybrid bill, both revenue-raising and appropriationary, in the nature of House Bills 1613 and 1502 here under consideration. Interestingly, Bill 48A was drafted with an eye toward raising and spending funds "which were absolutely necessary for immediate emergency relief," just as House Bill 1613 had its inception in repairing severe storm damages to MUW. Id. Returning to the Wisconsin case, upon presentation of Bill 48A to that state's governor, he approved parts, vetoed others and returned the bill with his objections to the state's Assembly. The plaintiff sued, contending the grant of authority to the Governor allowing him to approve or disapprove different parts of an appropriation bill did not also allow him to veto "a proviso or condition inseparably connected to the appropriation, nor to disapprove parts of an appropriation bill that are not an appropriation."Id. at 490.
In a well-reasoned opinion, the Wisconsin Supreme Court first determined it was not necessary to address the issue of the effect of an attempted veto of provisos or conditions "inseparably connected to the appropriation":
 [U]pon analyzing the terms of the bill in question, we have concluded, for reasons hereinafter stated, that the parts which were disapproved by the Governor were not provisos or conditions which were inseparably connected to the appropriation. If they had been, the decision in State ex rel. Teachers Officers v. Holder, 76 Miss. 158, 23 So. 643, would afford support for the plaintiff's contention.
260 N.W. at 490.
The constitutional grant giving the Wisconsin governor the authority to effect a partial veto is found in section 10, article 5 of that state's constitution which reads, in part:
 Appropriation bills may be approved in whole or in part by the governor, and the part approved shall become law. . . .
Having found the bill at issue to contain distinct, severable parts, the Wisconsin Court determined the Governor could properly exercise his partial veto authority:
 It may well be that section 10, art. 5, Wis. Const., was not intended to empower the Governor, in vetoing parts of an appropriation bill, to dissever or dismember a single piece of legislation which is not severable, or so as to leave merely provisions which are not a complete or fitting subject for a separate enactment by the Legislature. Although that may not have been intended, there in nothing in that provision which warrants the inference or conclusion that the Governor's power of partial veto, was not intended to be as coextensive as the Legislature's power to join and enact separable pieces of legislation in an appropriation bill.
260 N.W. at 492.
The Wisconsin Court concluded:
 It follows that, in approving those parts of the bill which now constitute chapter 15, Laws of 1935, and in disapproving the other parts of the bill which were not essential, integral, and interdependent parts of those which were approved, the Governor was acting entirely within his constitutional prerogative under section 10, art. 5., Wisc. Const. Therefore, upon the return of the parts vetoed by the Governor to the Assembly, and the refusal of two-thirds of the members thereof to pass those parts over the Governor's veto, only those portions of the bill which had *Page 1049 been approved by the Governor constitute the legislative enactment, which it became the duty of the secretary of state to cause to be published. . ..
Id., 260 N.W. at 493.
Following the most logical analysis of the Wisconsin Court, this writer would submit that as concerning House Bills 1502 and 1613, those provisions or "parts" properly eliminated through the Governor's use of his partial veto authority, were not enacted into law, save the possibility that they be passed over the Governor's veto. The remaining parts of both bills, as approved and signed by the Governor, became law. This would include the single instance where the Governor improperly attempted to use a partial veto in Bill 1613, Line 57, where he substituted his own amended figure for that provided by the Legislature. See § 73 — "The governor may veto parts of any appropriation bill, and approve parts of the same, and the portions approved shall belaw."
Throughout both bills the Governor also crossed through the total amounts allocated and inserted a figure representing the amounts allocated after all vetoed items were deducted. Again, with the exception of line 57, Bill 1613, there was nothing improper in this action; it was mathematically logical for the Governor to note the total amounts allocated to reflect consistency with the totals for each item he properly approved. This was no different than, for example, the Governor inserting the figure "0" at each point in the bills where he vetoed a particular item.
There is further support for the conclusion that the invalid attempt to partially veto an item is ineffectual and results in the entire item being approved, even in State v. Holder, cited as the majority's primary support. Therein, the Court considered the Governor's attempt to exercise his partial veto under § 73 to be void, the bill in question "not being an appropriation bill within its meaning, and not being a veto of parts of distinct and separable appropriations." Id., 76 Miss. at 183, 23 So. 643. I would submit that neither reason applies to render the Governor's actions void in the case sub judice, the bill being both an appropriation bill and made up of clearly distinct and separable, and therefore severable, parts.
The Holder Court noted the "true meaning of section 73", as follows:
. . . [A]n appropriation bill made up of several parts — that is, distinct appropriations, different, separable, each complete without the others, which may be taken from the bill without affecting the others, which may be separated into different parts complete in themselves — may be approved and become law in accordance with the legislative will, while others of like character may be disapproved and put before the legislature again, disassociated from the other appropriations.
76 Miss. at 181-82, 23 So. 643.
Contrary to the legislation considered in Holder, it is submitted that House Bills 1502 and 1613 are clearly the type of bills contemplated for use of the Governor's partial veto authority. That certain "parts" of the bills were vetoed, as that authority is expressly provided for in § 73, in no way affected those remaining parts which the Governor approved.
House Bill 1613, as it were, began as a measure designed to serve only a single purpose — to remedy damages caused by severe storms at the campus of Mississippi University for Women and a separate appropriation for Alcorn State University to continue its previously approved construction. It would appear obvious that these appropriations are completely separate and distinct from each other, but, more importantly, from the numerous remaining allocations of millions of additional dollars to be spent at twenty-five (25) other colleges, universities and campuses. The same result follows when Bill 1502 is considered; simply because appropriations for certain projects were not approved in no way affects those which the Governor did approve. Any other conclusion would severely limit the partial veto authority clearly given the Governor under § 73 and to which individual parts of these bills were validly subjected. The legislative history of the subject bills provides a classic example of what can be potentially wrong with omnibus appropriation bills and why Section 73 was *Page 1050 
enacted to allow partial veto by the Governor. The Holder Court appropriately stated:
 Section 73 was framed with a view of guarding against the evils of omnibus appropriation bills, securing unrighteous support from diverse interests, and to enable the governor to approve and make law some appropriations, and to put others to the test of securing a two-thirds vote of the legislature as the condition of becoming law. Thus viewed, section 73 is eminently wise, and will prove useful in practice as corrective of an evil, but if a single bill, making one whole of its constituent parts, "fitly joined together," and all necessary in legislative contemplation, may be disevered by the governor, and thereby become law, while the other parts, unable to secure a two-thirds vote in both houses, will not be law, we shall have a condition of things never contemplated, and appalling in its possible consequences.
76 Miss. at 180-81, 23 So. at 644-45.
Finally, consistent with Holder, as to the single allocation improperly vetoed by Governor Fordice, where the Governor by attempted amendment, substituted his own figure for that allocated by the Legislature, his action was a nullity, as such action constituted writing legislation which is solely the Legislature's authority.
In conclusion, the fact that the Governor improperly attempted to exercise a partial veto at one point in House Bill 1613, a nullity, should have no effect on the parts of the bills validly approved. Similarly, the items properly vetoed in accordance with the Governor's § 73 partial veto power may become law only if returned to the Legislature in a timely manner and passed over the Governor's veto by a vote of two-thirds of the members.
Regardless, Governor Fordice has certainly not "invaded" the judicial branch by merely exercising his right under § 73 of the Mississippi Constitution to strike portions of the respective bills with which he disagreed, as claimed in the concurring opinion. Our founding fathers wisely created three, separate but equal branches of government, each delegated with certain responsibilities which often cause the occupants of the respective branches to disagree, and rightfully so in the interest of good government and what is best for the taxpaying citizens.
However, there is no need to express views toward Governor Fordice, or any sitting Governor for that matter, that because he exercises his partial veto authority under § 73 he is therefore expressing "indifference to this Court," or "disdain for the legislative and judicial branches." Such comments are uncalled for, unnecessary and serve no purpose whatsoever. Governor Fordice has the constitutional right to properly exercise a line item veto as well as a responsibility to do so if and when he deems it to be in the best fiscal interest of the taxpaying citizens of this state. That is a governor's perogative as chief executive officer of this state.
This writer has great respect for the separation of powers established by our constitution. Although there will be occasional disagreement on important governmental issues between the three separate branches, nevertheless, we should always when expressing our disagreement do so with courteous respect for the other branches of government.
For the reasons set forth above, I respectfully dissent.
DAN M. LEE, P.J., joins this opinion in part.