The Honorable Lana Gordon State Representative, 52nd District 5820 S.W. 27th Street Topeka, Kansas 66614
Dear Representative Gordon:
You request our opinion regarding the authority of the Governor to exercise his line-item veto power to veto subsection 141(l) of 2002 Senate Bill No. 517, as enrolled and presented to the Governor. Subsection 141(l) was intended to prohibit the expenditure of state money in fiscal year 2003 to reinforce the State Capitol building dome in preparation for placement of the Ad Astra sculpture atop the dome.
2002 Senate Bill No. 517 is one of only two appropriations bills passed during this year's legislative session. As enacted, it contains 181 separate sections and spans 255 pages of the 2002 Session Laws of Kansas.[1] It contains appropriations for 80 Executive Branch agencies, boards and commissions (including several Regents' institutions), the Judicial Branch and the Legislature. After much debate and compromise in the House and Senate, the bill was presented to the Governor on May 13, 2002.[2] The Governor approved the bill on May 18, 2002, except for sections 120(c), 141(l) and portions of sections 88(a) and 157(a).[3] On May 31, 2002, a motion to override these line-item vetoes failed in the Senate.[4] Thus, the line-item vetoes were sustained[5] and the bill, absent those provisions, took effect on June 6, 2002.[6] Work on the dome has begun and moneys have been expended and/or encumbered for this purpose. Subsequently, on August 28, 2002, you requested this opinion. While you requested an expedited response, because the specific issue you raise regarding the dome reinforcement was moot (due to the work already being in progress and the money being already spent or encumbered) before the opinion was sought, and because of the gravity of the issue and its implications for other line-item vetoes, we believe a more deliberate, thoughtful approach is warranted.
Section 141(l), as presented to the Governor, provided as follows:
"(l) During the fiscal year ending June 30, 2003, no moneys appropriated for the department of administration for the fiscal year ending June 30, 2003, from the state general fund or any special revenue fund by this or other appropriation act of the 2002 regular session of the legislature shall be expended by the department of administration for the purpose of reinforcing the statehouse dome for placement of the Ad Astra sculpture atop the statehouse dome: Provided, That the provisions of this subsection shall not apply to gifts, grants or donations received for this project."[7]
In his message explaining the reasons for this line-item veto, the Governor stated:
"Section 141(l) has been line-item vetoed in its entirety.
"This section prohibits the Department of Administration from spending state funds during FY 2003 to reinforce the dome of the Statehouse so it will support the Ad Astra sculpture. However, private gifts, grants, or donations could be used for this project. At the time the agreement was made with the artist of the statue, no provision was made for support of the dome to be financed with private funds. The purpose of this proviso is not clear. When this item was considered during review of the budget, some objections were raised about the incorporation of this project into the broader Statehouse renovation effort, which would have allowed it to be financed through the State General Fund debt service payments on the renovation. If this proviso is intended to prevent this project from becoming funded from debt service for the Statehouse renovation, it is overbroad because it prohibits the use of any public funds for the project. Therefore, I line-item veto this proviso because it is unneccessary and unduly restrictive."[8]
You pose two questions: Was the Governor's veto of 2002 Senate Bill No. 517, § 141(l), within the authority granted by Article 2, Section14(b) of the Kansas Constitution; and if the action taken by the Governor was beyond the scope of this authority, does subsection 141(l) have force and effect thereby prohibiting expenditure of state funds to reinforce the statehouse dome?
Article 2, Section 14(b) of the Kansas Constitution sets forth the only authority granted to the governor of the State of Kansas to veto less than an entire legislative enactment.[9] That provision states:
"If any bill presented to the governor contains several items of appropriation of money, one or more of such items may be disapproved by the governor while the other portion of the bill is approved by the governor. In case the governor does so disapprove, a veto message of the governor stating the item or items disapproved, and the reasons therefor, shall be appended to the bill at the time it is signed, and the bill shall be returned with the veto message to the house of origin of the bill. Whenever a veto message is so received, the message shall be entered in the journal and, in not more than thirty calendar days, the house of origin shall reconsider the items of the bill which have been disapproved. If two-thirds of the members then elected (or appointed) and qualified shall vote to approve any item disapproved by the governor, the bill with the veto message, shall be sent to the other house, which shall in not more than thirty calendar days also reconsider each such item so approved by the house of origin, and if approved by two-thirds of all the members then elected (or appointed) and qualified, any such item shall take effect and become a part of the bill."
As you note, this office has addressed application of this provision on at least two prior occasions, finding that the line-item veto power extends only to items of appropriation of money, and defining the term "items of appropriation of money" very narrowly.[10] However, these opinions, No. 81-82 and 76-168, addressed circumstances factually different from the present situation.[11] Additionally, both opinions predate the one Kansas case that touches on this issue, State ex rel.Stephan v. Carlin.[12] The opinions thus relied heavily on case law from other states. By focusing only on cases that had interpreted the term "items of appropriation of money" very narrowly, the opinions imply it is a term that is commonly understood by at least a majority of the states that have addressed the issue, and that the Governor's veto power is very limited. To the contrary, an associate professor of law at Columbia University School of Law in New York has gathered research from many states on this issue and has found that there are at least three schools of thought:
"The first tends to favor the legislature, either by limiting the portions of an appropriations bill that a governor can veto, or by assimilating the item veto to the traditional executive veto in order to limit the governor's ability to disaggregate the legislative compromises incorporated in a bill. In effect, the court will defer to the legislature's determination of how the portions of a bill fit together and whether two arguably severable provisions are really one item. This approach generates relatively predictable case law, but fails to appreciate how the item veto differs from the traditional veto and thereby erodes the item veto's anti-logrolling function.
"The second approach relies on some of the basic conceptual assumptions of the first and seeks to maintain the legislature's primacy in determining the structure and contents of legislative bills, but recognizes that the historic purpose of the item veto was to enhance the executive's role and to empower the governor to undo some of the linkages of material within a bill. Courts pursuing this approach seek an ongoing reconciliation of executive and legislative prerogatives, but the balance struck by particular courts will often seem arbitrary, and the lack of consistency in judicial decisions increases the likelihood of future litigated conflicts.
"The third, and least common, approach is to give the executive broad authority to determine the contours of a vetoable item. Like deference to the legislature, this approach raises the possibility of consistent, categorical decision-making. An executive-centered approach to the definition of an item may follow from the logic of the item veto, but it is such a departure from the traditional approach to separation of powers that it has taken root in only one state-Wisconsin-and even there it has been the focus of considerable controversy."[13]
Attorney General Opinions No. 81-82 and 76-168 failed to consider or even acknowledge the second and third possible approaches.[14] More importantly, as noted previously, the opinions predate State ex rel.Stephan v. Carlin,[15] and Carlin itself predates significant developments in other states having similar constitutional provisions conferring line-item veto authority.
In Carlin, the Court found the provision there at issue, Section 77 of the 1981 appropriations bill, to be wholly foreign to the subject of appropriations in violation of Article 2, Section 16 of our Constitution (the two-subjects provision) and void for that reason. In a case decided one year after Carlin, the Kansas Supreme Court held that a restriction on the expenditure of state moneys very similar to subsection 141(l) of 2002 Senate Bill No. 517 was properly included in an appropriations bill.[16] Thus, the two-subjects provision does not appear to be at issue in our present analysis. Neither does the title requirement of Article 2, Section 16 appear to be of concern.[17]
With regard to the governor's line-item veto authority, the Carlin
Court stated:
"(1) Section 14(a) of Article 2 authorizes the governor to veto any bill which he does not approve by returning it, with a veto message of the objections, to the house of origin. This provision of the constitution contemplates the veto of an entire act. A veto of Senate Bill No. 470, however, coming at the close of the regular legislative session, would have left a large segment of state government without funds for the coming fiscal year.
"Section 14(b) of Article 2 provides the only authority for the governor to veto less than an entire legislative act. This subsection authorizes the governor to veto one or more `items of appropriation of money,' when a single bill contains several such items. This provision contemplates a "line-item veto" the veto of one or more parts of an appropriation measure while approving the remainder. For example, under this subsection the governor may, if he chooses, veto the appropriation of a sum of money for a specified purpose while leaving the other provisions of an appropriation bill intact.
"Article 2, Section 24 of our Constitution states: `No money shall be drawn from the treasury except in pursuance of aspecific appropriation made by law.' (Emphasis added.) InState, ex rel. v. Fadely, 180 Kan. 652, 661, 308 P.2d 537
(1957), we were called upon to define that phrase. We said:
"`The term "specific appropriation made by law" may be defined as an authority of the legislature, given at the proper time and in legal form to the proper officials, to apply a distinctly specified sum from out of the state treasury, in a given period, for a specified objective or demand against the state. In general terms, a "specific appropriation made by law" is the act of setting money apart formally or officially for a special use or purpose by the legislature in clear and unequivocal terms in a duly enacted law.'
"Similarly, `items of appropriation of money,' as that phrase is employed in Section 14(b), means the designation of specific sums of money which the legislature authorizes may be spent for specific purposes. Somecommon examples of `items of appropriation of money' are these. There is appropriated (for a named agency) from the state general fund: for salaries and wages, $500,000; for operating expenditures, $200,000; for the purchase of a site (at a stated location for a certain purpose) $15,000; and for a certain purpose from a certain fund, no limit (the authorized sum being the amount in the described fund).
"Turning now to Section 77 of Senate Bill No. 470, it is clear that this section is not an item of appropriation of money. In that section, the legislature did not authorize the spending of a specific sum of money for a specific purpose; it sanctioned no disbursement of money from the public treasury for a certain purpose. The section was not subject to the line item veto authorized by Section 14(b) of Article 2 of our Constitution."[18]
The inference that may be drawn from this case is that any provision that does something more or different than designate a specific sum of money to be spent for a specific purpose is not an "item of appropriation of money" subject to line-item veto. However, this is not actually the Court's holding in Carlin. Because the provision at issue in that case was an amendment to an existing substantive statute dealing with school finance and restrictions on school district budgets and held to be "wholly foreign to the subject of appropriations," it was clearly not an "item of appropriation of money" within the meaning of Article 2, Section 14(b); the Court did not need to, and in fact did not, discuss whether stand-alone restrictions or limitations on state expenditures that are properly included in an appropriations bill could or should be considered an "item of appropriation of money." While the Court uses examples of common "items of appropriation," it does not specifically limit its definition to these examples. In fact, because the Carlin Court held as it did with regard to the two-subjects issue, it really did not need to address the Governor's line-item veto power at all. As that discussion is not necessary to the holding, it might be considered dicta and therefore not binding precedent.
We consider the issue you raise, the extent of the executive line-item veto authority, one of great importance to the operation of this State's government. "The Governor's statutory authority to propose the State budget, and his constitutional power to exercise a selective veto over legislative appropriations, constitute significant responsibilities for the State's fiscal affairs, and are essential to an efficient, modern system of government."[19] As mentioned previously, subsection 141(l) was not the only provision to be line-item vetoed by the Governor in Senate Bill No. 517. Additionally, the Governor exercised line-item veto authority to veto certain sections and portions of sections contained in 2002 House Substitute for Senate Bill No. 363, another appropriations bill.[20] Thus, while you specifically question the line-item veto of only one particular provision, any opinion we provide in this regard will likely have a bearing on several other provisions. We therefore believe it imperative to proceed with caution and due regard for the magnitude of the issue presented. Because there is no conclusive authority in this State that expenditure restrictions and limitations are not to be considered "items of appropriation of money" for purposes of the Article2, Section 14(b) of the Kansas Constitution, we believe that, should the issue reach them, the Kansas appellate courts would also undertake a more critical and comprehensive review of this issue, taking into account all the case law and scholarly studies, much of which postdates the decision in Carlin.
While the Kansas Supreme Court has indicated an inclination to construe the executive veto power fairly narrowly,[21] it did so in terms of the veto power generally. The circumstances leading to adoption of the line-item veto power in particular must also be kept in mind. Clearly there was felt to be a need to allow the governor to veto portions of an appropriation bill without having to veto the entire bill. It is generally understood that the purpose underlying the line-item veto power was threefold: "the rejection of legislative logrolling; the imposition of fiscal restrictions on the legislature; and the strengthening of the governor's role in budgetary matters. In other words, the item veto may be said to be at the confluence of the policies underlying the single-subject rule, the balanced budget requirement, and the executive budget."[22]
2002 Senate Bill No. 517 is an ideal example of how logrolling would be a serious problem if not for the line-item veto authority. As mentioned previously, this bill contains 181 separate sections and the majority of fiscal year 2003 appropriations for all three branches of state government. It was presented to the Governor in the waning days of the regular session. If it were not for the line-item veto power, the Governor would have been faced with either approving the entire bill, portions over which he had serious concerns, or vetoing the State's primary spending bill at a time when the Legislature probably would not have been able to pass another without being called into a special session. The anti-logrolling purpose behind the line-item veto is intended to prevent the Governor from being placed in such an impossible position. The Kansas Supreme Court's holding in Manhattan Buildings,[23]
that spending restrictions are not a subject wholly foreign to appropriation bills and therefor not violative of the two-subjects provision, renders the Governor's authority to line-item veto such provisions even more imperative from an anti-logrolling perspective.[24]
Like Kansas, the State of Iowa has a constitutional prohibition on any bill containing more than one subject.[25] Nevertheless, the Iowa Supreme Court followed the rule laid down in Wisconsin, which does not have such a provision, when it concluded that the Governor may veto any severable provision that is placed in an appropriations bill.[26] The Iowa Court had before it a provision that prohibited relocation of the permanent resident engineers' offices. There was no argument that the bill of which this provision was a part was an appropriations bill. The Court held that the particular provision was not itself an appropriation of money, nor was it a condition or qualification limiting the expenditure of specific appropriated funds (instead being a more general restriction). However, the Court nevertheless found that it was an "item" that was subject to line-item veto. Part of the Wisconsin case relied upon by the Iowa Court in reaching its conclusion included the following statement:
"[T]here is nothing in [the Wisconsin line-item veto] provision which warrants the inference or conclusion that the Governor's power of partial veto was not intended to be as coextensive as the Legislature's power to join and enact separable pieces of legislation in an appropriation bill. As the Legislature can do that in this state, there are reasons why the Governor should have a coextensive power of partial veto, to enable him to pass, in the exercise of his quasi legislative function, on each separable piece of legislation or law on its own merits."[27]
We read this to mean that, if a provision is properly included as a separable provision in an appropriations bill, whether or not the state has a two-subjects prohibition, it is fair game for line-item veto.
With regard to the second purpose behind the line-item veto, imposition of fiscal restrictions on the Legislature, the line-item veto of a restriction on spending would not typically further this goal. Vetoing a legislative restriction on spending actually allows for more unfettered spending and thus does not serve to prevent the legislative branch from overspending.
However, as with the first, the third purpose underlying the line-item veto also appears to have application in this scenario. Kansas statutes support the theory that the Governor has a prominent role in the State's budgeting process.[28]
"The item veto tends to force the legislature to adhere to the general outlines of the governor's budget and makes it harder for the legislature to depart from the governor's spending plan. . . . The governor's authority is by no means absolute, since in every state the legislature can override gubernatorial item vetoes, usually by a two-thirds vote. But the item veto conforms to the judgment of most states by shifting the balance of power towards the governor with respect to appropriations. The item veto is intended to give the governor the power of separate consideration and veto over all appropriations matters, subject to legislative override."[29]
This was the view expressed by the Supreme Court of New Jersey inKarcher v. Kean.[30]
"The power and authority to appropriate funds are vested in the legislative branch of government. Although this power to appropriate and expend state monies is reserved exclusively to the Legislature, the Governor nonetheless plays a vital constitutional role in the budget process. The ultimate legislative authority over appropriations is subject to checks and balances from the executive. The Governor is statutorily authorized to `examine and consider all requests for appropriations' and to `formulate . . . budget recommendations to be forwarded to the Legislature for its consideration and ultimate approval.' N.J.S.A. 52:27B-20. Further, and of critical relevance in this case, the Governor is constitutionally empowered to object to any item or items included in an appropriation bill through the exercise of a selective veto.
. . . .
"The Governor's statutory authority to propose the State budget, and his constitutional power to exercise a selective veto over legislative appropriations, constitute significant responsibilities for the State's fiscal affairs, and are essential to an efficient, modern system of government."[31]
With this understanding of the context and purpose underlying the Governor's line-item veto authority, the New Jersey Court held that "general conditions, limitations, or restrictions [on the expenditure of appropriated monies] found in an appropriations act can be the discrete subject of the gubernatorial line-item veto. . . . In our opinion, the selective veto power may be exercised with respect to any subject matter that is included in the appropriations act and is broadly related to the State's fiscal affairs as reflected in the act."[32] New Jersey's constitutional provision conferring line-item veto authority is almost identical to that found in the Kansas Constitution.[33]
In State ex rel. Cason v. Bond,[34] the Supreme Court of Missouri reached a different conclusion with regard to the Governor's line-item veto authority. However, that case involved the veto of a purpose statement or condition attached to a specific appropriation. The Court viewed the veto of the purpose or condition but not the dollar appropriation to which it was specifically attached as a rewriting of the law; the Governor was in effect increasing a generic appropriation by eliminating restrictions on the use of that specific amount of money.[35]
The Louisiana Supreme Court in Henry v. Edwards,[36] approached the issue in a manner that combined the Missouri Supreme Court reasoning with that of the New Jersey Supreme Court. The Henry Court held that "if the Governor wishes to disapprove of conditions or limitations legitimately included in an appropriation bill, he must veto not only the conditions or limitations, but also the money `item' to which they are connected."[37] However, the Court also found that, in order to properly balance the legislative and executive powers in this arena, "when the legislature inserts inappropriate provisions in a general appropriation bill [such as special interest legislation or substantive provisions], such provisions must be treated as `items' for purposes of the Governor's item veto power over general appropriation bills."[38] The Court then noted that in order to be immune from line-item veto, a condition or limitation must "exhibit such a connexity with money items of appropriation that they logically belong in a schedule of expenditures. . . . The ultimate test is one of appropriateness."[39]
In Washington State Legislature v. Lowry,[40] the Supreme Court of the State of Washington explained its position as follows:
"Because the purpose of the Governor's `line-item' veto is to excise line items in appropriations bills, we should give effect to such a purpose. The Legislature frustrates such a purpose, however, if it drafts budget bills as lump sum appropriations to agencies. The only feature of modern legislative bill drafting in Washington that resembles the traditional budget line item is the budget proviso.
"Consequently, we hold that any budget proviso with a fiscal purpose contained in an omnibus appropriations bill is an `appropriations item' under article III, section 12. Thus, so long as the Legislature drafts budget bills as lump sum appropriations to agencies conditioned by provisos as we have defined them here, the Governor's appropriations item veto power extends to each such proviso. (FN8. The budget provisos to which the Governor's line item veto extends include full provisos to an appropriations bill, that is, full subsections of the section of an appropriations bill. We do not believe an `appropriations item' may be a sentence, phrase, letter, digit, or anything less than the whole proviso.)"[41]
In Rios v. Symington,[42] the Arizona Supreme Court, while accepting the traditional definition of an appropriation as "the setting aside from the public revenue of a certain sum of money for a specified object, in such manner that the executive officers of the government are authorized to use that money, and no more, for that object, and no other,"[43]
nevertheless held that a transfer from a previously made appropriation constitutes an "item of appropriation" subject to line item veto.[44]
"Viewed in isolation, the fund transfers themselves are not clearly `items of appropriation,' because the transfers themselves do not constitute a legislative grant of spending authority, much less state a specified sum of money to be devoted to a specified purpose. However, we do not believe that such a narrow view reflects the proper interplay between the legislative and executive branches. When the Legislature transfers monies from a previously-made appropriation, the obvious effect is to reduce the amount of the previous appropriation. The Constitution does not permit such reductions free of gubernatorial oversight. To hold otherwise would permit the Legislature to do indirectly that which it may not do directly, and would seriously limit the Executive's constitutional role in the appropriation process."[45]
Clearly, not all states construe the term "item of appropriation" as narrowly as was suggested in Attorney General Opinions No. 81-82 and 76-168. There does not appear to be any universal definition, nor universal agreement as to what the lines of authority are. Rather, the cases indicate to us that it is a fact specific case-by-case analysis that the courts generally perform, with an eye toward striking balance between the legislative and executive constitutional powers.[46]
We have yet to find a case with circumstances identical to those present with the veto of subsection 141(l) of 2002 Senate Bill No. 517. The proviso contained in subsection (l) is not attached to a specific appropriation of money made in Senate Bill 517 (and even attempts to limit appropriations made in other bills), but it is included in the same section as the several appropriations for a specific agency, the Department of Administration; subsection (l) is a stand-alone provision, easily separable from the remainder of the section of which it is a part and the bill as a whole; the Governor vetoed the entire provision contained in subsection (l), he did not attempt to veto just a word, phrase or sentence of that subsection; subsection (l) prohibits expenditure of funds for a particular purpose, it does not authorize or appropriate funds for a specific purpose or transfer funds from one permitted purpose to another; subsection (l) is clearly related to appropriations and properly placed in an appropriations bill.
Based on the totality of the circumstances surrounding subsection 141(l) and its veto, and the purposes underlying the executive line-item veto power as expressed in the authorities cited herein, we believe that the Kansas appellate courts would find persuasive the cases that, in balancing the executive and legislative powers, have held that if a provision can lawfully be included in an appropriations bill and is indeed a separable item not closely linked to a single appropriation, then it is subject to line-item veto. Thus, we believe the Kansas courts would interpret the term "item of appropriation of money" broadly enough to conclude that the veto of subsection 141(l) of 2002 Senate Bill No. 517 was within the spirit of the executive line-item veto power and constitutional. Because we have concluded that the veto was appropriate, we need not address the second question you raise.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] L. 2002, Ch. 204.
[2] 2002 Journal of the Senate 2125.
[3] 2002 Kan. Sess. Laws 1644-45.
[4] 2002 Journal of the Senate 2305.
[5] Id. See Kan. Const., Art. 2, § 14(b) (two-thirds vote of both houses needed to override line-item veto).
[6] L. 2002, Ch. 204, § 181; Kan. Reg., Vol. 21, No. 23, 893 (June 6, 2002).
[7] 2002 Journal of the Senate 1871.
[8] 2002 Kan. Sess. Laws 1645 (emphasis in original).
[9] State ex rel Stephan v. Carlin, 230 Kan. 252, 256 (1981).
[10] Attorney General Opinion No. 81-82 (governor can not line-item veto appropriation bill provision effecting a transfer of money within the treasury or imposing conditions, limitations or qualifications on an appropriation or constituting an independent statement of substantive law); Attorney General Opinion No. 76-168 (governor can not line-item veto appropriation bill provision approving of statewide television system).
[11] Id.
[12] 230 Kan. 252.
[13] Richard Briffault, The Item Veto in State Courts, 66 Temp. L. Rev. 1171, 1184-85 (1993).
[14] We note, however, that many of the cases cited by Professor Briffault were decided after those opinions were issued.
[15] 230 Kan. 252.
[16] Manhattan Buildings, Inc. v. Hurley, 231 Kan. 20, 31 (1982).
[17] See Heinz v. Larimer, 119 Kan. 861 (1925); State v. Dawson,90 Kan. 839 (1913).
[18] Carlin, 230 Kan. at 255-56 (emphasis added).
[19] Archer v. Kean, 479 A.2d 403, 406 (N.J., 1984).
[20] 2002 Kan. Sess. Laws 1646-49.
[21] State v. French, 133 Kan. 579 (1931).
[22] Richard Briffault, The Item Veto in State Courts, 66 Temp. L. Rev. 1171, 1177 (1993). See also Washington State Legislature v. Lowry, 931 P.2d 885, 889-90 (1997); State ex rel. Coll v. Carruthers,759 P.2d 1380, 1383 (N.M. 1988).
[23] 231 Kan. 20.
[24] See Reilly v. Knapp, 105 Kan. 565 (1919) (discusses evils of logrolling in appropriations acts).
[25] Iowa Const., Art. III, § 29.
[26] Turner v. Iowa State Highway Commission, 186 N.W.2d 141, 149-52
(Iowa 1971), quoting extensively State ex rel. Wisconsin Telephone co.v. Henry, 260 N.W. 486, 490-92. The Court noted that it saw no significant distinction between the terms "items of appropriation of money," "item," and "part," 186 N.W.2d at 149-50.
[27] Turner, 186 N.W.2d at 152, quoting Henry, 260 N.W. at 492.
[28] See K.S.A. 75-3714a et seq.
[29] Richard Briffault, The Item Veto: A Problem in State Separation ofPowers, 2 Emerging Issues in State Constitutional Law 85, 89-90 (Copyright 1989 by the National Association of Attorneys General).
[30] 479 A.2d 403 (N.J. 1984).
[31] Id. at 406 (citations omitted).
[32] Id. at 416, citing cases in Massachusetts, New Mexico, Ohio and Wisconsin.
[33] New Jersey's provision does allow veto of an item or items of an appropriation of money "in whole or in part," but this quoted language was not what the Court relied upon in reaching its conclusion in this regard. Rather, the language was found to be merely additional support for the conclusion already reached by the Court.
[34] 495 S.W.2d 385 (Mo. 1973).
[35] Id. at 390-92 (Mo. 1973).
[36] 346 So.2d 153 (1977).
[37] Id. at 157.
[38] Id. at 158.
[39] Id.
[40] 931 P.2d 885 (1997).
[41] Id. at 893.
[42] 833 P.2d 20 (1992).
[43] Id. at 23.
[44] Id. at 25.
[45] Id. at 26.
[46] The New Jersey Supreme Court specifically approached the appropriateness of a line-item veto of a restriction on expenditures from a separation of powers perspective in Communications Workers of America,AFL-CIO v. Florio, 617 A.2d 223 (1992).